**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNIE STRINGFELLOW, | Case No. 1:24-cv-01461-BAM (PC) |
| Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION |
| v. | |
| SILVA, *et al.*, | FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS |
| Defendants. | |
| | (ECF Nos. 1, 12) |
| | **FOURTEEN (14) DAY DEADLINE** |

**I.    Background**

Plaintiff Ronnie Stringfellow ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

On October 30, 2025, the Court screened the complaint and found that Plaintiff stated a cognizable claim against Defendants E. Prieto and S. Silva for excessive force in violation of the Eighth Amendment, for the acts noted in the screening order, but failed to state any other cognizable claims for relief against any other defendant.  (ECF No. 11.)  The Court ordered Plaintiff to either file an amended complaint or notify the Court of his willingness to proceed only on the cognizable claim identified by the Court.  (*Id.*)  On December 1, 2025, Plaintiff notified the Court that he was willing to proceed only on the claims against Defendants Prieto and Silva as

1  noted in the Court's order.  (ECF No. 12.)

2  **II.    Screening Requirement and Standard**

3        The Court is required to screen complaints brought by prisoners seeking relief against a

4  governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C.

5  § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous

6  or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

7  relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

8        A complaint must contain "a short and plain statement of the claim showing that the

9  pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

10 required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

11 conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

12 *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as

13 true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*,

14 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

15       To survive screening, Plaintiff's claims must be facially plausible, which requires

16 sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

17 for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret*

18 *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully

19 is not sufficient, and mere consistency with liability falls short of satisfying the plausibility

20 standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

21     **A.    Allegations in Complaint**

22       Plaintiff is currently housed in Mule Creek State Prison in Ione, California.  Plaintiff

23 alleges the events in the complaint occurred while he was housed in Kern Valley State Prison in

24 Delano, California.  Plaintiff names as defendants:  (1) S. Silva, correctional officer, (2) E. Prieto,

25 correctional officer, (3) E. Diaz, correctional officer, (4) John/Jane Doe, Warden.

26       In claim 1, Plaintiff alleges excessive force.  Plaintiff alleges that July 11, 2023, at about

27 12:05 hours, Plaintiff was being escorted by correctional officers Defendants Prieto and Silva

28 when Plaintiff was instructed to remove an earring.  The earring was legally purchased as a

transgender inmate from a package vendor. While attempting to explain that the earring was not contraband, Officer Silva began aggressively grabbing Plaintiff's left earlobe causing Plaintiff to experience extreme pain. Plaintiff cried out moving his head in the opposite direction. Plaintiff was still attempting to explain this item was not contraband as well as bring to the officers attention that this item should be removed only by a nurse or other medical official. The situation quickly escalated by Officer Silva proceeding to further remove the earring in an aggressive and painful manner. Once again Plaintiff felt pain and moved his head away. Plaintiff was unable to move due to being restrained in waist restraints and having both Silva and Prieto holding Plaintiff biceps in hand. Plaintiff felt that this was an assault on his person as a transgender inmate. To avoid the assault, Plaintiff stooped to his feet. Plaintiff was viciously slammed to the ground with no way to break Plaintiff's fall. Plaintiff landed on his back, Plaintiff was in physical mechanical restraints in waist chains causing both hands to be by his side and Plaintiff had no way of breaking his fall. The fall caused the air to be knocked out of Plaintiff's lungs. Both Defendants were kneeing Plaintiff in the back, while jumping onto Plaintiff's stomach, causing Plaintiff to attempt to fold over in pain. Defendants yelled "stop resisting" to cover up their assault. Plaintiff was rolled onto Plaintiff's stomach. Plaintiff was moving Plaintiff's upper body in attempt to gain his breath. Defendant Silva then slammed Plaintiff's head into the ground. As Plaintiff lay on the ground, Plaintiff felt a leg or knee being pressed into Plaintiff's neck area pinning Plaintiff's face to the ground and dislodging a face implant "Dermal" from Plaintiff's facial area, causing severe pain and bleeding.

     Defendant Silva attempted to remove the item from Plaintiff's ear, causing Plaintiff' pain. Plaintiff felt in danger of further injury or death and attempted to breathe and defend himself by moving his upper body and neck while moving his head and gulping breath. Plaintiff felt someone place their arm by his nose and mouth and immediately Plaintiff' mouth was filled by an arm. Plaintiff felt as if the person was trying to smother Plaintiff. Plaintiff closed his mouth and caught the arm in his mouth.

     The arm retreated and Plaintiff was accused of biting the arm which Plaintiff adamantly denied. A hood, designed to restrict spittle, was placed over Plaintiff's head and face. Plaintiff

1   could not breath and was not able to see because of the mask.  Plaintiff swung his head to the side
2   and accidently struck one of the Defendants.  Plaintiff was once again viciously slammed face
3   first to the ground with one of the Defendants placing their whole body weigh on Plaintiff's back,
4   and again restricting Plaintiff's breathing.  A security triangle was attached to Plaintiff's
5   handcuffs behind Plaintiff's back with Plaintiff's hands behind his back.  The handcuffs were
6   placed tight enough to restrict Plaintiff's blood flow and cut into his skin.

7      Plaintiff was placed onto a medical gurney with his hands behind his back where Plaintiff
8   was strapped in.  Plaintiff's shoulders and arms were in immense pain.

9      Plaintiff was escorted to his assigned cell #188.  Once in Plaintiff's cell, he was
10  unstrapped and lifted into Plaintiff into his cell placed face down into the prone position.  His
11  hands were cuffed behind his back and a metal triangle attached to his cuffs.  The leg restraints
12  were removed and Defendants exited Plaintiff's cell holding the triangle.  Once the cell door was
13  closed, Plaintiff was still in the prone position, not being able to get up on Plaintiff's knees or feet
14  due to being handcuffed and being attached to the triangle.  Defendants Prieto and an unknown
15  officer used their strength maliciously and violently used the triangle/mechanical restraint as a
16  weapon by pulling with combined strength backwards forcing Plaintiff from a prone position into
17  a half kneeling position.  This nearly dislocated Plaintiff's shoulders and the cuffs were cutting
18  into Plaintiff's wrist.  The cuffs and triangle were removed and the tray slot was closed.

19     Plaintiff alleges the force used dislocated his shoulder/arm and cut his wrist, dislodged a
20  facial implant and cause bleeding.

21     Plaintiff seeks compensatory and punitive damages.

22  **B.     Discussion**

23     Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8 and fails to
24  state a cognizable claim for relief, except as noted below.

25         **1.     Federal Rule of Civil Procedure 8 and Linkage**

26     Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim
27  showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  Detailed factual allegations
28  are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

4

1  conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted).  Plaintiff must
2  set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on
3  its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  While factual allegations
4  are accepted as true, legal conclusions are not.  *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*,
5  572 F.3d at 969.

6   In addition, Section 1983 plainly requires that there be an actual connection or link
7  between the actions of the defendants and the deprivation alleged to have been suffered by
8  Plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362
9  (1976). Plaintiff must link each defendant to purported constitutional violations.  Plaintiff fails to
10 link Defendant Diaz and Defendant Doe Warden to any wrongful conduct.

## 2. Supervisory Liability

12  Insofar as Plaintiff is attempting to hold the warden, or any other defendant, liable based
13 on his supervisory role, he may not do so.  Liability may not be imposed on supervisory personnel
14 for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*,
15 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010);
16 *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930,
17 934 (9th Cir. 2002).  "A supervisor may be liable only if (1) he or she is personally involved in
18 the constitutional deprivation, or (2) there is a sufficient causal connection between the
19 supervisor's wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d
20 967, 977 (9th Cir. 2013) (citation and quotation marks omitted); *accord Lemire v. Cal. Dep't of
21 Corrs. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013); *Lacey v. Maricopa Cty.*, 693 F.3d 896,
22 915–16 (9th Cir. 2012) (en banc). "Under the latter theory, supervisory liability exists even
23 without overt personal participation in the offensive act if supervisory officials implement a
24 policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving
25 force of a constitutional violation." *Crowl*ey, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d
26 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

27 ///

28 ///

**3.     Eighth Amendment – Excessive Force**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v McMillian*, 503 U.S. 1, 5 (1992) (citations omitted).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quotations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7.  Relevant factors for this consideration include "the extent of injury . . . [,] the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 1078, 1085 (1986)).  Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials. *See Whitley*, 475 U.S. at 321–22.  Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9.  De minimis uses of physical force do not violate the constitution provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Plaintiff fails to state a cognizable claim for excessive force in attempting to remove the earring, as the allegations show that the officers believed it was contraband and Plaintiff was resisting their efforts.  Plaintiff also fails to state a claim for being placed in a hood or for the initial placement of the triangle because the allegations show that Plaintiff had put his mouth on (bit) a Defendant's arm and his other actions could be reasonably construed as resisting, e.g., swinging his head.  Plaintiff fails to state a claim for "smothering" because the allegations show

6

this was part of the attempt to remove the earring and Plaintiff was resisting.

Liberally construing the allegations, as the Court must at this juncture, Plaintiff states a cognizable excessive force claim for: (1) the events from slamming Plaintiff to the ground and until the point where Plaintiff's implant was dislodged, (2) when Plaintiff was "once again" viciously slammed face first to the ground with one of the Defendants placing their whole body weight on Plaintiff's back, and again restricting Plaintiff's breathing, and (3) using the triangle to pull Plaintiff backwards in his cell from a prone position to kneeling, dislocating Plaintiff's shoulder/arm and cutting his wrist.

Plaintiff fails to state a claim for tight handcuffs. It is well-established that overly tight handcuffing can constitute excessive force. *Wall v. Cnty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004). However, here, even accepting as true plaintiff's assertion that the handcuffing caused cuts, there are insufficient facts to show that any use of force was malicious or sadistic. "In general, in cases where tight handcuffing was found to constitute excessive force, the plaintiff was in visible pain, repeatedly asked the defendant to remove or loosen the handcuffs, had pre-existing injuries known to the defendant, or alleged other forms of abusive conduct by the defendant." *Reviere v. Phillips*, No. 1:11-CV-0483 AWI DLB PC, 2014 WL 711002, at *6 (E.D. Cal. Feb. 21, 2014) (collecting cases). Because there are no facts from which to infer the Defendants' malicious or sadistic intent regarding the handcuffs, Plaintiff's complaint fails to state an excessive force claim for tight handcuffs.

### 4. Doe Defendants

Plaintiff alleges an unknown officer was involved. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe or Jane Doe defendants (i.e., unknown defendants) cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe.

## III. Conclusion and Recommendation

Based on the above, the Court finds that Plaintiff's complaint states a cognizable claim against Defendants E. Prieto and S. Silva for excessive force in violation of the Eighth

7

1  Amendment, for: (1) the events from slamming Plaintiff to the ground and until the point where
2  Plaintiff's implant was dislodged, (2) when Plaintiff was "once again" viciously slammed face
3  first to the ground with one of the Defendants placing their whole body weight on Plaintiff's
4  back, and again restricting Plaintiff's breathing, and (3) using the triangle to pull Plaintiff
5  backwards in his cell from a prone position to kneeling, dislocating Plaintiff's shoulder/arm and
6  cutting his wrist.  However, Plaintiff's complaint fails to state any other cognizable claims for
7  relief against any other defendants.
8  　　　Accordingly, the Clerk of the Court is HEREBY DIRECTED to randomly assign a
9  District Judge to this action.
10 　　　Furthermore, it is HEREBY RECOMMENDED that:
11  1. This action proceed on Plaintiff's complaint, filed November 22, 2024, (ECF No. 1),
12      against Defendants E. Prieto and S. Silva for excessive force in violation of the Eighth
13      Amendment, for: (1) the events from slamming Plaintiff to the ground and until the point
14      where Plaintiff's implant was dislodged, (2) when Plaintiff was "once again" viciously
15      slammed face first to the ground with one of the Defendants placing their whole body
16      weight on Plaintiff's back, and again restricting Plaintiff's breathing, and (3) using the
17      triangle to pull Plaintiff backwards in his cell from a prone position to kneeling,
18      dislocating Plaintiff's shoulder/arm and cutting his wrist; and
19  2. All other claims and defendants be dismissed based on Plaintiff's failure to state claims
20      upon which relief may be granted.
21                                            * * *
22  These Findings and Recommendations will be submitted to the United States District
23  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within
24  **fourteen (14) days** after being served with these Findings and Recommendations, the parties may
25  file written objections with the court.  The document should be captioned "Objections to
26  Magistrate Judge's Findings and Recommendations."  **Objections, if any, shall not exceed**
27  **fifteen (15) pages or include exhibits.  Exhibits may be referenced by document and page**
28  **number if already in the record before the Court.  Any pages filed in excess of the 15-page**

**limit may not be considered.**  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **December 2, 2025**              /s/ Barbara A. McAuliffe            
                                   UNITED STATES MAGISTRATE JUDGE